UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 3:22-CR-67-TAV-DCP-1 |
| CLIFFORD JAMES METEER, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant's Motion to Vacate Conviction and Dismiss the Indictment or in the alternative Motion for Early Termination of Probation [Doc. 52]. The government responded [Doc. 56], and this matter is now ripe for resolution. *See* E.D. Tenn. L.R. 7.1(a). Because defendant's conviction for being a felon in possession of a firearm in this district does not fall within the scope of the presidential pardon, defendant's motion [Doc. 52] is **DENIED**.

**I.  Background**

On April 10, 2023, defendant pled guilty to possessing firearms after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) [Docs. 26, 31]. As a factual basis for this plea, the parties indicated that, on August 10, 2021, Federal Bureau of Investigation ("FBI") Special Agents executed a search warrant at defendant's residence where they recovered firearms and ammunition [Doc. 26 ¶ 3(a)]. In his sentencing memorandum, defendant provided more context for this search [Doc. 40]. Specifically, defendant stated that he unlawfully entered the U.S. Capitol on January 6, 2021 [*Id.* at 2].

He was criminally charged for his involvement in the breach of the Capitol and arrested in August 2021 [*Id.*]. Contemporaneous with his arrest, a search warrant for his residence was executed, which resulted in the discovery of the firearms at issue in this case [*Id.* at 2–3].

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agreed that a sentence of 24 months' probation, with a condition that the first 9 months be served on home confinement, was the appropriate disposition of this case [Doc. 26 ¶ 5]. At sentencing, the parties orally moved to amend their Rule 11(c)(1)(C) agreement to recommend a sentence of 48 months' probation, with the first 9 months to be served on home confinement and 20 hours of community service [Doc. 43]. On August 17, 2023, the Court sentenced defendant to 48 months of probation, with conditions that the first 9 months be served on home confinement and that defendant complete 20 hours of community service [Doc. 46].

On January 20, 2025, President Donald J. Trump issued a proclamation entitled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." 90 Fed. Reg. 8331 (Jan. 20, 2025). Citing his constitutional pardon power,[1] the President "grant[ed] a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." *Id*.

---

[1] "[The President] shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const. art. II, § 2, cl. 1.

Additionally, the President directed the United States Attorney General to "administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above" and "pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id.*

Defendant then filed the instant motion, seeking to vacate his conviction, or, in the alternative, terminate his probationary term based on the presidential pardon [Doc. 52]. Defendant contends that the pardon should cover his conduct in this case because "agents were coming to arrest [him] for the January 6th charges when the firearms that formed the basis on this charge were found" [*Id.* at 3]. Defendant notes that other federal courts have concluded that similar conduct is covered by the presidential pardon, citing *United States v. Costianes*, No. 24-4543 (4th Cir. Oct. 15, 2024), *United States v. Ball*, No. 5:24-cr-97 (M.D. Fla.), and *United States v. Martin*, No. 24-7203 (9th Cir.) [*Id.* at 3–5].

The government responds that it agrees that the presidential pardon is applicable in this case, and therefore, the Court should grant defendant's request for termination of his probation [Doc. 56, p. 1]. The government notes that the language of the presidential pardon regarding events "related to" January 6 indicates that the pardon extends beyond the events that occurred at the Capitol on that date [*Id.* at 2]. The government asserts that "[t]here is no sound basis on which to conclude that the firearm-possession offense would

3

have been discovered other than as a byproduct of the investigation of [defendant's] actions at the Capitol on January 6" [*Id.*].[2]

## II. Analysis

The Court begins by noting that "President Trump unquestionably has the authority to pardon [a defendant] for all of his convictions. That authority is clear and virtually unreviewable." *United States v. Wilson*, Nos. 25-cv-545, 23-cr-427, 2025 WL 1009047, at *8 (D.D.C. Mar. 13, 2025) ("*Wilson I*"). This Court does not address the validity of the President's pardon, as this power is his alone to exercise as he sees fit, within the bounds of the Constitution. The question before this Court is simply whether defendant's felon-in-possession offense in this district falls within the scope of the pardon's language.

As noted above, the language of the pardon states that President Trump "grant[ed] a full, complete and unconditional pardon to all other individuals convicted of offenses *related to* events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. 8331 (Jan. 20, 2025) (emphasis added). In interpreting the "related to" language of the presidential pardon, the Court previously held as follows:

> The Court's analysis begins with the text. *See Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). Courts tasked with interpreting the meaning of Executive materials have generally sought to effectuate their ordinary meaning. *See Ex Parte Grossman*, 267 U.S. 87, 115 (1925) (construing the plain meaning of a presidential pardon to determine its effect); *Wan v. Debolt*, No. 20-CV-3233, 2020 WL 6274992, at *3 (C.D. Ill. Oct. 26, 2020) (citing *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)) ("The Court gives

---

[2] Notably, the government contests whether the appropriate remedy is vacatur of the conviction or early termination of probation [Doc. 56]. Because the Court ultimately finds that this case does not fall within the scope of the presidential pardon, it need not address this issue.

4

the language of the Executive Order its plain and ordinary meaning as the language is clear and unambiguous."); *United States v. Ehsan*, 163 F.3d 855, 858 (4th Cir. 1998) (applying the "ordinary meaning" of Executive Order terms in the absence of definitions); *Montague v. United States*, 79 Ct. Cl. 624, 629 (Fed. Cl. 1934) (holding that Executive Orders "hav[e] the dignity and force of a statute [and] must be construed under the rules applicable to the construction of statutes").

Although the pardon does not define with precision the term "related," the Court interprets the text as a whole and finds that **the pardon is primarily constrained by temporal and spatial parameters as defined by the date and location of "events."** *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("The text must be construed as a whole."); *see also Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) (citing Scalia & Garner as authoritative). The term "related" has been defined as "[c]onnected in some way; having relationship to or with something else." *Related*, *Black's Law Dictionary* (12th ed. 2024). As noted in the *Oxford English Dictionary*, when coupled with "to" or "with," the term "related" functions grammatically as a predicative adjective, connecting its subject and object. *Related*, *Oxford English Dictionary Online*, https://doi.org/10.1093/OED/6785072134 (last visited Feb. 26, 2025). Under the grammar cannon, "[w]ords are to be given the meaning that proper grammar and usage would assign them." Scalia & Garner, *supra*, at 140. So, to discern the meaning of "related" in its predicative use, an interpreter must pay careful attention to the subject and object being related.

Here, the pardon's subject "offenses" must be connected to "events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. 8331. The meaning of the pardon's term "related to," therefore, is shaped by the meaning of the phrase that follows, the defining attributes of which are place and time. *See* Scalia & Garner, *supra*, at 167 ("Context is a primary determinant of meaning."). By applying the whole-text canon and parsing the meaning of this "events" clause, the Court arrives at its interpretation of the pardon as a whole. Put somewhat differently, by defining *what* type of "events" are being related the text also suggests *how* these "events" must be related to "offenses."

First, the pardon situates "events" within the physical vicinity of "the United States Capitol" in Washington, D.C. The pardon's first locational term, "*at* . . . the United States Capitol" straightforwardly refers to the Capitol grounds and building. 90 Fed. Reg. 8331 (emphasis added). The second

5

term, "*or near* the United States Capitol," is undefined, but its contextual meaning is shaped directly by the term "at." *Id*. (emphasis added); Scalia & Garner, *supra*, at 195 ("Associated words bear on one another's meaning (*noscitur a sociis*)."). And the ordinary meaning of the term "near," defined as "close at hand" and "not distant," could not be understood to encompass, for example, all events occurring within the District of Columbia. *Near*, *Oxford English Dictionary Online*, https://doi.org/10.1093/OED/8756758026 (last visited Feb. 26, 2025). **Nor could "near" be read to include events occurring in an entirely different state.**

Second, the pardon limits its scope to events occurring "on January 6, 2021." This phrase is considerably more precise. It refers to a single date—not a month, period of months, or larger timeframe. **The ordinary meaning of this date could not be understood to encompass any other, unenumerated dates, and certainly not a date occurring in a different month of a subsequent year.** This time provision appears immediately after the physical location provision without the term "or," or delineating punctuation; therefore, the "events" contemplated by the pardon must satisfy *both* conditions of place and time.

To summarize, although the pardon does not define "related," application of interpretive canons reveals that relatedness by time and place should be given primary weight. Moreover, the President's selection of these two criteria from among other potential forms of relation implies, to some extent, the subjugation or exclusion of other forms of relation. *See* Scalia & Garner, *supra*, at 107 ("The expression of one thing implies the exclusion of others (*expressio unius est exclusion alterius*)."). However, while connections by time and place should be given primary weight based on the text's ordinary meaning, the term "related to" is broad enough to encompass causal or substantive connections[.]

*United States v. Kelley*, No. 3:22-cr-118, 2025 WL 757583, at *3–4 (E.D. Tenn. Mar. 10, 2025) (footnotes omitted) (emphasis added). Subsequent to this Court's decision in *Kelley*, other courts have agreed that the plain meaning of the pardon's text limits its scope to offenses occurring on a particular date (January 6, 2021), and at a particular location (the U.S. Capitol). *See United States v. Costianes*, --- F. Supp. 3d ---, 2025 WL 1358352, at *5

6

(D. Md. May 9, 2025) ("holding that "if an individual was convicted of an offense related to events that occurred (1) at or near the United States Capitol and (2) on January 6, 2021, the Pardon applies. Otherwise, it does not."); *Wilson I*, 2025 WL 1009047, at *4 (holding that, for an offense to fall within the scope of the pardon "it must be tethered to a specific time—January 6, 20221—and place—at or near the U.S. Capitol") (citing *Kelley*, 2025 WL 757583, at *3); *see also United States v. Wilson*, No. 25-3041, 2025 WL 999985, at *2 (D.C. Cir. Apr. 2, 2025) ("*Wilson II*") (appearing to concur with the language in *Wilson I*).

Defendant cites the *Costianes* case in support of his argument, stating that such case has "near-identical facts to the instant case" [Doc. 52, p. 4]. Defendant specifically cites to the government's argument in *Costianes* that the pardon covered the collateral charge [*Id.*]. However, the District of Maryland recently rejected the arguments of both the defendant and the government in *Costianes*, concluding that "in this case—where Costianes pleaded guilty to possessing firearms and ammunition by an unlawful user of any controlled substance in violation of 18 U.S.C. § 922(g)(3) on February 12, 2021 at his home in Maryland—the Pardon does not apply" because "[t]he offense occurred on February 12, 2021, not on January 6, 2021" and it occurred "in the District of Maryland, not at or near the United States Capitol." 2025 WL 1358352, at *6. Moreover, the court noted that "[t]he offense itself in no way related to the events of January 6, 2021 at the Capitol." *Id.* The court thus concluded that the defendant's firearm possession offense was "entirely unrelated to his conduct on January 6[.]" *Id.*

7

As here, the parties in *Costianes* argued that the pardon should apply to the offense because it was discovered during the execution of a warrant arising out of defendant's January 6, 2021, conduct. *Id.* The district court acknowledged that defendant's "crime would likely not have been uncovered had he not been present at the United States Capitol that day and had the warrants related to that conduct not issued," but concluded that "the plain language of the Pardon simply cannot be stretched so far as to cover [defendant's] offense in [that] district." *Id.* The court "recognize[d] that 'related to' can have a broad meaning," but held that "even such a broad term cannot be unlimited in scope." *Id.* The court ultimately concluded that the pardon applies to *offenses*, not *investigations*, related to January 6. *Id.* at *7.

Similarly, in the *Wilson* cases, the district and appellate courts in the District of Columbia have addressed a situation where the defendant pled guilty to charges of possession of an unregistered firearm and being a felon in possession of a firearm (which originated in the Western District of Kentucky, but were later transferred to the District Court for the District of Columbia), when the firearms at issue were discovered during the search of defendant's home as part of an investigation of defendant's actions at the Capitol on January 6. *Wilson I*, 2025 WL 1009047, at *1. Shortly after the pardon issued, the government argued before the district court that the plain language of the pardon did not apply to these firearm offenses. *Id.* The district court agreed, and, in February 2025, held that the plain language of the pardon did not cover defendant's firearm offenses. *Id.* at *2. Subsequently, the government began to change its position in several cases, and, when

8

defendant filed a motion to vacate, under 28 U.S.C. § 2255, the government responded, asserting for the first time that the pardon did cover defendant's firearm offenses. *Id.*

But the district court ultimately concluded that because defendant did not use the firearms he possessed in Kentucky when he conspired to impede and injure officers at the Capitol on January 6, 2021, his firearm convictions were not covered by the pardon. *Id.* at *4. The court stated that "[w]hile 'related to' has a capacious meaning, it cannot be 'taken to extend to the furthest stretch of its indeterminacy . . . for really, universally, relations stop nowhere.'" *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The court concluded that "the phrase [related to] cannot extend so far as to cover *any* criminal offense—no matter how physically or temporally remote to the January 6 Capitol events—solely because some evidence supporting the offense was recovered during a January 6 investigation." *Id.* at *5 (emphasis in original). The court stated that "[c]ontrary to the pardon's plain language and structure, the parties' reading of the pardon conflates offenses discovered during the January 6 investigations with offenses that occurred at or near the Capitol on January 6." *Id.* (citing *Kelley*, 2025 WL 757583, at *7). The court thus found that the defendant's firearm offenses "bear no relationship to the events that occurred at the Capitol on January 6, 2021" and therefore "they are not covered by the plain language of the Presidential Pardon." *Id.* The court stated that "[t]o interpret the Presidential Pardon to apply to any type of offense—no matter when or where that offense was committed—simply because evidence of that offense was uncovered incident to a January 6-related search warrant

9

would 'defy rationality.'" *Id.* at *8 (citations and internal alterations omitted). The court highlighted that "President Trump alone has the constitutional authority to pardon [defendant] for all of his crimes. He still may do so. But this Court cannot—it is duty bound to enforce the Presidential Pardon *as written*." *Id.* at *9 (emphasis in original).

The defendant in *Wilson* has appealed the district court's decision to District of Columbia Circuit, and that appeal remains pending. *See* D.C. Cir. Electronic Case Filing System ("ECF"), Case No. 25-3041. But the D.C. Circuit denied Wilson's request for release pending appeal. *Wilson II*, at *1–2. Specifically, the D.C. Circuit found that the defendant had not established a likelihood of success on the merits, stating that the language of the pardon "plainly applies to related offenses—not, as here, to an offense that is only connected to January 6 by the happenstance that it was uncovered during investigation of the unrelated January 6 offenses." *Id.* at *2. The D.C. Circuit explained: "The pardon does not cover offenses wholly independent of events at the Capitol on January 6, even if uncovered during investigation of January 6 offenses. What matters is the relationship between the offenses." *Id.* That court concluded that, because the defendant's firearm offenses occurred at a different time and place, and the elements of the offenses bear no relationship to conduct that occurred at the Capitol on January 6, they are not covered by the plain language of the pardon. *Id.*

The Court likewise finds that, consistent with these cases, and the Court's prior decision in *Kelley*, defendant's possession of a firearm on August 10, 2021, in Knoxville, Tennessee [Doc. 26, p. 2] is not an offense "related to events that occurred at or near the

10

United States Capitol on January 6, 2021." 90 Fed. Reg. 8331.  The Court agrees with defendant that the *Costianes* case involves "near-identical" facts to this case and finds that the court's disposition of that case is highly persuasive.  And, indeed, the parties cite to no cases from this Circuit or otherwise that would compel a different result in this case.

Defendant does cite the government's position in *United States v. Ball*, No. 5:24-cr-97 (M.D. Fla.) [Doc. 52, p. 4].  In that case, which was still in the pretrial stage, the government moved to dismiss the indictment under Rule 48(a) of the Federal Rules of Criminal Procedure.  M.D. Fla. ECF, Case No. 5:24-cr-97, Docs. 41, 42.  The district court granted the government's motion without discussion.  *Id.*, Doc. 45.  But this case is readily distinguishable.  First, because *Ball* was in the pretrial stage at the time of the pardon, rather than a post-conviction stage, like this case, *Ball* involved a government motion for dismissal of the indictment under Rule 48(a).  And "[c]ourts have limited power when the federal government decides to stop prosecuting a criminal defendant."  *United States v. Gonzalez*, No. 24-462, 2025 WL 275605, at *2 (D.D.C. Jan. 23, 2025).  Thus, "a district judge has no power to deny a prosecutor's Rule 48(a) motion to dismiss charges based on disagreements with the prosecution's exercise of charging authority."  *Id.* at *3 (internal quotation marks omitted) (citing *Fokker*, 818 F.3d at 742).  As a result, the District of Columbia has granted numerous Rule 48(a) motions relating to the presidential pardon, even after finding the government's rationale for such motions lacking.  *See, e.g., id.*; *United States v. Conemac*, No. 24-462, 2025 WL 266560 (D.D.C. Jan. 22, 2025); *United States v. Banuelos*, 763 F. Supp. 3d 1, (D.D.C. 2025); *United States v. Giusini*, No. 24-318,

11

2025 WL 275683 (D.D.C. Jan. 23, 2025); *United States v. Mullsteff*, No. 23-330, 2025 WL 266494 (D.D.C. Jan. 22, 2025). Moreover, even absent this significant difference in procedural posture, the district court in *Ball* provided no explanation for its order granting the government's motion to dismiss. *See* M.D. Fla. ECF, Case No. 5:24-cr-97, Doc. 45. Accordingly, *Ball* contains no persuasive rationale that would lead the Court to conclude that this defendant's offense conduct in this district falls within the scope of the presidential pardon.

Defendant also cites to the government's position in an appeal before the Ninth Circuit, *United States v. Martin*, Case No. 24-7203 (9th Cir.) [Doc. 52, p. 4]. At the district court level, the District Court for the Eastern District of California found defendant guilty of possession of a firearm and ammunition by a person with a prior conviction for a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9), after a bench trial. E.D. Cal. ECF, Case No. 1:21-cr-228, Doc. 115. This charge apparently stemmed from firearms located at the defendant's home during the execution of a search warrant related to an investigation of defendant's actions at the Capitol on January 6, 2021. Ninth Cir. ECF, Case No. 24-7203, Doc. 5, p. 6. The defendant was sentenced to 38 months' imprisonment on November 25, 2024. E.D. Cal. ECF, Case No. 1:21-cr-228, Doc. 122. The defendant appealed that conviction to the Ninth Circuit. *Id.*, Doc. 124. On January 7, 2025, before the pardon was issued, the defendant filed a motion for bail pending appeal. *Id.*, Doc. 133. At a hearing on that motion, defense counsel argued that the

12

Case 3:22-cr-00067-TAV-DCP   Document 57   Filed 06/06/25   Page 12 of 15
PageID #: 261

presidential pardon applied to both the defendant's January 6 charges and his California charges.  *Id.*, Doc. 140.  The district court denied the motion.  *Id.* at 15.

The defendant then moved for bail pending appeal in the Ninth Circuit, arguing, in part, that his firearm possession offense fell within the scope of the presidential pardon. Ninth Cir. ECF, Case No. 24-7203, Doc. 5.  The government opposed this request, arguing that the defendant's firearms conviction was not within the scope of the pardon.  *Id.*, Doc. 10.  However, only a few days later, the government filed a supplemental response stating that it no longer opposed the motion for release pending appeal, stating that "[a]fter consultation with the leadership of the Department of Justice" the government believed the defendant should be released pending appeal because "[t]here is a substantial question of law or fact regarding Martin's pardon[.]"  *Id.*, Doc. 23.  The Ninth Circuit granted the motion for bail pending appeal in light of the government's non-opposition.  *Id.*, Doc. 24. However, the appeal remains pending, and, while the parties were ordered to brief the impact of the pardon on the defendant's conviction, *see id.*, Doc. 26, briefing has not yet been completed.

The *Martin* case is also unpersuasive.  At this stage of the litigation in *Martin*, the defendant has not had his conviction overturned, or even his sentence altered in light of the pardon.  Rather, he has simply been granted release on bail pending the appeal, based on the government's non-opposition to that limited relief.  And, indeed, when the defendant in that case first raised his argument that his conviction fell within the pardon, the district court expressed skepticism about that claim.  *See* E.D. Cal. ECF, Case No. 1:21-cr-228,

13

Doc. 140, p. 6 (stating "I don't think there's any—there could be any argument that possessing weapons in California occurred at or near the Capitol," and "What you're saying is, well, they never would have caught him. And I don't think that's the same thing"). Accordingly, the Court finds that *Martin* is distinguishable and is unpersuasive in this case, at its current stage.

So, the parties have provided no case law that would support a finding that defendant's offense in this case would fall within the scope of the presidential pardon. And the Court's independent review of cases from around the country only supports a finding that unrelated offenses discovered during the investigation of January 6 activity do not fall within the scope of the pardon. Indeed, the Court has located no apparent decision in any case in a post-conviction setting where any court has granted a defendant relief under the pardon under these circumstances.

Ultimately, the Court finds that the plain language of the pardon limits its scope to offenses related to actions taken on January 6, 2021, at the U.S. Capitol, and such language is not broad enough to include entirely unrelated firearms possession offenses, on a different date, in a different location, simply because the offense was discovered during an investigation into the defendant's conduct on January 6, 2021, at the Capitol. As the *Wilson I* court stated, President Trump has the authority to pardon defendant of any or all of his criminal offenses. *See Wilson I*, 2025 WL 1009047, at *9. But this Court must enforce the pardon as it is written. *See id*. And, as written, the pardon does not encompass

defendant's felon-in-possession offense in Tennessee in August 2021. Thus, defendant's request for relief based on the presidential pardon is **DENIED**.

### III. Conclusion

For the reasons discussed above, defendant's Motion to Vacate Conviction and Dismiss the Indictment or in the alternative Motion for Early Termination of Probation [Doc. 52] is therefore **DENIED**. The government's second motion for extension of time [Doc. 55] is **GRANTED**, to the extent that the Court considered the government's response [Doc. 56] in this memorandum opinion and order.

IT IS SO ORDERED.

                                          s/ Thomas A. Varlan
                                          UNITED STATES DISTRICT JUDGE